Good morning. May it please the court, my name is Peter Wolfe. I represent Mr. Kamana'o in this habeas matter. If I might, I think I would start with a quotation from the BMW case, which I think illuminates an issue which both vex the parties and the district court and which from time to time has, I think, been somewhat troublesome to this court as well concerning the applicability of buoy to sentencing schemes. And in BMW, the Supreme Court said, elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a state may impose. Now, the BMW case was a civil case. That's right. The issue there was punitive damages, as I recall. That's true. So that language, at least insofar as application in a criminal case, is pure dictum, isn't it? I don't think so, Your Honor, because there was no criminal issue before the court. Well, that's true, but they cited buoy in the footnote that both followed that quotation, and they cited two other criminal decisions. And then the court noted that the principle was even stricter in a criminal case than it was in a civil case, which, as you point out correctly, was the issue in BMW. So what I'm trying to do here is get past the problem, which the district court wrestled with and which the parties have briefed, and what to do about those Ninth Circuit cases, such as DuPas and the others. And I think what one could say, when you illuminate the issue with the teaching of BMW, is this, the result in DuPas is a sound result. But to the extent that it talked about buoy, the discussion of it is not sound. And so the distinction between the kind of case we have here, which is where a penalty was increased by a retroactive application of an unforeseeable principle, namely that a consecutive sentence could be imposed, is quite different from what you have when various defendants were quarreling about the fact that when the guidelines were struck down or were reformed by the Supreme Court in Booker, and it made it easier for a district judge to impose a sentence both above the guidelines and below, that somehow that implicated buoy. And I think the difference is that DuPas, in those cases, dealt with procedure. This is a substantive increase in the penalty. And here's the way I think you can see that that has to be clearly right, which is this. If in the remedial opinion in Booker, the Supreme Court had not excised certain language and thereby made the guidelines advisory, if the Supreme Court just said, no, this guideline scheme is unconstitutional, and it's out. So in other words, if one justice hadn't switched sides, in effect, from the Sixth Amendment part of the opinion to the remedial opinion, I don't think anybody would argue that striking down the guidelines meant that there was no penalty at all for criminal statutes or for criminal acts. Because behind whatever the guideline scheme was or became after Booker was the statutes from Congress. And those statutes clearly established maximum penalties and clearly established the district court's right to impose consecutive sentences. Well, I guess I'm following your argument. And you haven't got a lot of time, so I'm interrupting you. I mean, the bottom line is that I don't see Bowie doing anything with sentencing. I really don't see it. I think that Bowie is precise. I think that it's narrow. And I think it says if a judge is going to interpret a statute and give it a construction that there's more culpable conduct, that that's one thing. But I guess I'm trying to find the Supreme Court case that says the Bowie principles are applying to criminal sentencing schemes. And I don't find it, and therefore, I'm having a tough time with your approach. Well, I think the answer is in BMW. Because, well, BFW, as my good colleague has pointed out, is not a criminal case. And I don't believe that we can just automatically adopt the language there to get to where you want to go, unless I've got something else. And the Ninth Circuit precedent doesn't help you either, in my book. Well, some of it helps me, and some of it doesn't help me. Well, I guess the interpretation you want to put on it, you may say some helps you. Well, the death penalty cases help me, because the court But this isn't a death penalty case, and it's never been applied in such a, I mean, it's never been applied outside that situation. That's right. But the principle that BMW says, which is you're entitled to fair notice of the penalty that state may impose, why is that a principle that protects the BMW corporation, but doesn't protect Mr. Kamanawa? That just doesn't make any sense at all, as a matter of logic. And the fact that in protecting BMW, the Supreme Court articulated that principle, extended the principle that it had arrived from criminal jurisprudence. Haven't you noticed what the Supreme Court's been doing lately? I was going to say that. That's exactly what they're doing, expanding the rights of businesses and minimizing the rights of. Well, that's true. But you're going in a little bit different direction than I am, Judge. Haven't you seen what the Supreme Court's been doing with our jurisprudence, when we try to expand anything beyond what they've said? Yeah, but that being said, that being said, I mean, there is something very troubling about the Hawaii Supreme Court's decision in this case, because they disregarded the plain language that was in the statute at the time. They turned it on its head. That is extremely troubling. I don't know how we get around all the principles of comedy or all of the language in all of our cases that says that bully doesn't apply to sentencing schemes. We do have that Oxborough case. But there's something just wrong about a court construing a statute in this way, when the plain language says something else. Well, it's not just that it's not. You're right. The plain language said something else. And the legislature of Hawaii acted entirely consistent with a note that said something else. Because in 1982, after common house crimes were committed, they changed the law to allow consecutive sentencing. And what they said repeatedly was, we have to do this because the prior law doesn't permit this. But just a minute. Again, I'm back to the reality of what you have in front of you. What court case tells me that I ought to get myself involved in reexamining a state determination of a state court question on habeas? Mulaney v. Wilbur says that. Well, I don't know that Wilbur gets there. I mean, we've gone out again on a limb. And we've tried to interpret what California was saying about its own code and whether California law was rightly applied. And we got beat down again. You're just asking us to do it again in Hawaii in a different situation. But that's not right, Your Honor. Because those California cases, if you're referring to the parole cases, what they went off on, what the Supreme Court went off on, was the question of whether there was procedural due process. And it said the substance of California law. What substantively a parolee or potential parolee is entitled to under California law is no business of the United States courts. But here we have a man who could not have been subjected to a consecutive sentence under the plain reading of the statute, the way everyone thought it meant, the way the legislature thought it meant when they reformed it in 1982. And the Hawaii Supreme Court just said it in order to avoid the problems on the second remand that were going to be extant if there was another attempt to impose an extended term. And the guy had already served his whole sentence. So I think that Judge Wardlaw has a right. It's not only troubling that this happened. It's unconstitutional. And if the court doesn't want to go down the road of the Bowie argument, then my second argument, the uncertified question, which we is it takes us there. Because just as a straightforward matter of due process, there's something very wrong with a person being subjected to an illegal sentence. So you're saying that we should say that the Hawaiian Supreme Court's decision is just untenable and a subterfuge for getting to some place where it wanted to go. I think that's right. Well, I have 46 seconds. So maybe I'll save it if I can unless the court has further questions. Thank you. Good morning, Your Honor. Don Fudel representing the respondents. Good morning. At the outset, there is no clearly established law that would extend to this case. Cases haven't been cited to the contrary because they just don't exist. And as the court has pointed out, this court cannot just expand Bowie beyond its obviously limited scope. There's a pervasive deception, a threat of which runs throughout Komenawa's entire argument. And I hear it expressed again today. The legislature amended it to permit consecutive sentencing. What has happened in the brief that counsel has submitted, he constantly refers to a law that wasn't this law, that didn't deal with repeat offenders. What he does through sleight of hand is equate multiple offenders, persistent offenders, professional offenders, all as repeat offenders. Those are non sequiturs. Okay, but let me just ask. So the plain language of this statute, it was in effect 706, this is repeat offenders. And that's what he was, Komenawa was sentenced under the repeat offender statute. Okay, it says shall be sentenced for each conviction after the first conviction to a mandatory minimum period. And then it lists that. It does not seem to authorize consecutive maximum periods. Actually, if one has a complete understanding of the indeterminate sentencing scheme, we could see the felicity in that argument. All right, so why don't you explain it to me so I can have a complete understanding. Okay, Your Honor. Under indeterminate sentencing, as it existed in Hawaii since 1912 in state and territory versus Armstrong, you have one sentence. It's composed of two parts. A statutory minimum term of imprisonment and a maximum indeterminate sentence. The judge must impose both. But there is one sentence. That's the false premise of the- Okay, there's one sentence. But how did the maximum and minimums play into that? 706, 606.5 authorized a mandatory minimum term of imprisonment of five years that has to be viewed in conjunction with the indeterminate maximum of 20. Together, they make the single sentence, which in subparagraph 3 says can run consecutive to any sentence then imposed or previously imposed. Previously imposed is important because that would be the triggering prior conviction that makes this particular individual a recidivist, a repeat offender. Okay, so in this case, what was the prior conviction? Felony possession of a firearm, Your Honor. And that was previously imposed. Was he serving time for that? He had been paroled for that, Your Honor. Paroled for that, okay. So how would you get the consecutive maximums and the concurrent minimum in this case applying the statute? He had the triggering requisite prior felony. That takes you to repeat. Because there's one previous conviction, the instant convictions were considered the second. That gives the court the responsibility to impose a five-year mandatory minimum term of imprisonment. Why do you keep emphasizing imprisonment? Because there is no such terminology used as defendant does, maximum sentence, minimum sentences. It connotes this misimpression that there's multiple sentences. There is but one sentence. I think we get that. I don't, I mean, but I'm, so within that one sentence, how do you add up to the two, applying the statute, the two consecutive 20 years and the concurrent 20 years? No, that's not what actually happened, Your Honor. Isn't that what he's sentencing right now? No, Your Honor. The mandatory minimum term of imprisonment has the same character as the underlying indeterminate maximum term of imprisonment. Two of the crimes were sacked consecutively. The third one with a different lady victim, it was set to run consecutive, as in all of the mandatory minimum terms of imprisonment have the same character as the underlying crime. If you were to separate a mandatory minimum term of imprisonment from the indeterminate maximum, you would have a statute, you would have a penalty longer than authorized by statute. For example, indeterminate 20s, class A's, are 20 years. In a situation where there's a second conviction, you get a five-year mandatory term of imprisonment. If you let those run separate, now you have a 25-year term for a class A. That's clearly in violation of the statute. The whole premise of the Supreme Court's analysis was you cannot separate and make the mandatory minimum term of imprisonment a separate sentence, because it is not. It is just prescribing how the first part of the mandatory total term of imprisonment must be served. The reason is previously, or in cases that aren't repeat offenders, the court sets the mandatory indeterminate term of imprisonment, and then the minimum term of imprisonment is set by the parole board. But with repeat offenders, because they pose such a persistent risk and danger to society, they wanted the court, at the sentencing junction, to be able to impose a set, determinate period of imprisonment for which no parole, no suspension. So the construct of an indeterminate sentence simply composes two parts. They can't be separated and considered separate sentences, because then- I don't think anyone's considering them separate sentences. We're talking about consecutive terms of incarceration. No one's thinking in that way, I don't think. I'm just deciding what was in counsel's brief. OK. All right. I was just simply asking you the question. I just wanted you to explain to me, by looking at the plain language of the repeat offender statute that was in effect, how the court came up with the sentencing. Because under subsection 1, it delineates certain class A felonies, two of which pertinent here are rape and sodomy. OK. Now, if you go to subsection 3, or at the tail of subsection 1, it authorizes for your second conviction, you'll have a five-year term. That's the mandatory term, minimum term of imprisonment, that will run with the indeterminate 20 for the rapes. Now, if you go to subsection 3, it tells us that the sentence imposed above, that would be for the rape, rape, and sodomies, that sentence can run consecutive to the prior sentence, which in this case was the felon in possession of the firearm, or any sentence that imposed, which would be any one of the three. And I don't mean to insult the court, but it's very important that we don't confuse what is a sentence with what are parts of a sentence. So you're bordering on insulting the court. I'm very sorry then. I've warned you of that right now, because I don't think anyone is confused with that. Confused was the wrong word. So what the Hawaii Supreme Court did is they took longstanding precedent from the 1900s to explain the very simple mechanism of indeterminate term sentencing. Do you understand, though, it looks like, just if you step back from the situation, he wins on direct appeal and goes back, and then he wins on habeas, and then he goes back, and he ends up with a longer sentence than he did originally. Originally, he had life, Your Honor. He had life. It's not a longer sentence. Then he went, but he doesn't have life now. Right, but originally he had life. The second time he had life, because they were trying to sentence him under the extended law, which is separate. That's 706-662. They wanted to sentence him as a multiple offender. That's what the court said wouldn't work based on apprendi. So as a repeat offender, the specific statute, 706-606.5, now became very important for the state to sentence an individual who still hadn't admitted his guilt and did not go through sex offender rehabilitation. So to set him out on the street, there's nothing unfair about that. And he was not targeted. The statutes said what it said. They were in existence at the time he committed the crime, as well as the time he got punished for the crime. So it wasn't a sleight of hand, and the Hawaii Supreme Court didn't rely on any sleight of hand. And especially, if one considers the primary author, which is Justice Acoba, he is consistently the justice that will protect the rights of a defendant. Our apprendi case law is a result of Judge Acoba's dissent continuously saying, illegal, illegal, illegal. Finally, in Rivera, his dissent became true. So to say that Justice Acoba constructed this opinion, this analysis to evade federal review, in this jurisdiction, that's singularly unbelievable. He had to have been aware that this case has a felony shadow. It's recited in the statements of facts. So certainly, I think if he wanted to evade federal review, he could have done a little bit better job. But that's just not the case. The mere fact that other justices or reasonable minds could disagree with the opinion, that doesn't make it untenable. That doesn't make it a subterfuge. If it were the case at the court, and at this point, I would ask judicial notice be taken, of the complete commentaries to the different statutes cited, and I have provided those for the court, and pursuant to Rule 201 of the Federal Rules of Evidence, I would ask that mandatory judicial notice be taken for the simple reason this. There are so many ellipses in defendant's quotes that omit the clear fact that the commentary was not addressing repeat offender law, but was addressing the law as it had to do with non-repeat offenders. If you take this commentary, and I can give the court the two books from which I took them, you will see very clearly he is talking about apples and oranges. And that deception should not prevail on the court. I have made copies of the relevant statutes with their complete commentary. I can leave these two volumes with the court, although on both, on all copies, I also noted where it's coming from. My understanding is the court has court tomorrow. I can pick up the volumes if anyone doubts my honesty to copies. No one's doubting your honesty, counsel. Feel free to file the copies of the commentary, and we can take judicial notice. We'll discuss it among ourselves, but thank you. And I think you're over your time. Do you want the books? I think we can find them. OK. Thank you, Your Honor. Well, this is a rather unusual day in the Ninth Circuit, in my experience. But let me just go to the statute that was in effect at the time Mr. Kamenow's crimes were committed on concurrent and consecutive terms of imprisonment. And it read as follows. This is 706-668, subsection 1, except as provided in subsection 2, which is not relevant here, because that had to do with people committing crimes while they were imprisoned or escaped from prison. When multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any discharged term of imprisonment is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall be served concurrently. That's rather straightforward. And that's the statute that was reformed in 1982, because the legislature thought that the law, and this was the law, didn't permit consecutive sentences until it was changed in 1982. The 706-606.5 statute has two notwithstanding clauses in its first two subsections. It doesn't have it on the third one. And so the third one has to do with the sentencing court may impose the above sentences consecutive to any other sentence than are previously imposed on the defendant. But it doesn't say notwithstanding any other law. So that is referring to the above sentences, meaning the above sentences in this subsection, which are the mandatory minimum terms. It doesn't say ignore 706-668, which is the consecutive concurrent sentencing laws that then existed. So I think that the Hawaii Supreme Court's interpretation is untenable. It was unforeseeable. And it was inconsistent with all the prior law that they had decided. And most importantly, perhaps, the Tavares case, which indicated that for purposes of repeat offender, a prior imposition of a sentence that happened at one time involving multiple counts in a single indictment, that would count as one sentence. That it wouldn't count as multiple sentences. So that was where the law was then. And so I think the principle that this was an extension that was unforeseeable. Do we have any pre-1982 cases from Hawaii that discuss how you would apply both the repeat offender and the multiple sentences or multiple terms? I think there's a couple that we, there's about four that we cite in our brief. I think the key one for the analysis here would be the Tavares case, where they indicated that multiple counts in a sentence that one time under a single indictment would count as one prior sentence. The other thing I would just note parenthetically, the Hawaii Supreme Court's jurisprudence and the Hawaii law on Apprendi doesn't come from Judge Acoba. It comes from two things. It comes from the fact that the Supreme Court denied cert in this court's case in Kaua, a case we litigated. And it comes from the fact that the Supreme Court GVR, meaning granted cert vacated or remanded for reconsideration, the Hawaii Supreme Court's case in Maugatega, where they had adhered to their previously, as we thought, inappropriate and untenable view of Apprendi. So it doesn't come from anything that happened, except that what the Supreme Court in this court had said repeatedly, which was Hawaii's interpretation of its extended term was contrary to Apprendi. Well, even if we were to agree with you on your reading of the law, we'd still have the problem of the Hawaii Supreme Court deciding, interpreting its own law in a different way. Right, and I think the two ways to deal with that is if the court adopts my view of what Bowie says and what BMW says, or if the court can't go there or won't go there, then it comes from the due process principle, which we articulate in our second issue, and which I think, going back to the Milligan, ex parte Milligan in the 1860s, made it clear that a person who might even be well deserving of punishment, who's being punished in an improper way in violation of the Constitution, it just can't stand up if we're going to have a free society, as we think we do. So thank you very much. All right, thank you, counsel. Appreciate your argument. Kamano versus Frank is submitted.
judges: Alarcon, Wardlaw, Smith N. R.